IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE FARM FIRE AND
CASUALTY COMPANY,

*Plaintiff,*

v.

TIMOTHY OLIVER, *et al.*,

*Defendants.*

Civil Action No.: ELH-15-2140

**MEMORANDUM**

State Farm Fire and Casualty Company ("State Farm"), plaintiff, has filed a declaratory judgment action against Mindy Alice Sperling and Timothy Oliver, pursuant to the Federal Declaratory Judgment Act, 22 U.S.C. § 2201, and Fed. R. Civ. P. 57. ECF 1. The suit is supported by several exhibits.

The declaratory action is rooted in a lawsuit filed by Ms. Sperling against Mr. Oliver, pending in the Circuit Court for Montgomery County, Maryland. A copy of the complaint filed by Sperling against Oliver is attached to State Farm's lawsuit as ECF 1-2. In her suit, Sperling claims that she sustained serious injuries on August 4, 2014, as a result of a deliberate beating by Oliver, who was then her boyfriend. State Farm seeks a declaration from this Court that it has no contractual duty to defend and/or indemnify Oliver, its insured, pursuant to its Condominium Unitowners Insurance Policy, because his conduct was intentional, willful, and malicious, and thus excluded from coverage.[1]

---

[1] According to State Farm, Sperling was named as an interested party under 28 U.S.C. § 2201. *See* ECF 1 ¶ 5. Sperling did not respond to the suit, and the Clerk entered an order of default on September 29, 2015. ECF 13.

Oliver has moved to dismiss the suit under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF 5), supported by a memorandum of law (ECF 5-1) (collectively, the "Motion"). In his view, State Farm has not properly alleged diversity jurisdiction. ECF 5-1 at 2-3. In addition, based on Maryland law, he asserts that this Court should exercise its discretion to reject the declaratory action. ECF 5-1 at 3-7.

State Farm opposes the Motion. ECF 6. It maintains that it properly invoked this Court's diversity jurisdiction. In addition, it contends that, based on the facts alleged, there is no potential for coverage for Oliver and therefore the requested declaratory relief is appropriate. *Id.*

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will deny the Motion.

## I. Factual Background

Sperling resides in the State of New York. ECF 1-2 ¶ 1. She filed suit against Oliver in the Circuit Court for Montgomery County, ECF 1-2 ¶ 2, alleging that Oliver is a "resident" of Montgomery County. *Id.* Sperling's tort suit contains six claims, as follows: Assault (Count One); Battery (Count Two); Intentional Infliction of Emotional Distress (Count Three); False Imprisonment (Count Four); Negligence (Count Five); and Gross Negligence (Count Six). The allegations are based on events that occurred in Maryland on August 4, 2014.

According to Ms. Sperling, on August 4, 2014, she resided "with her boyfriend, Timothy Oliver," in Maryland. ECF 1-2 ¶ 6. On that date, Oliver asked Sperling "to watch his dog while he worked at the National Institute [sic] of Health." *Id.* ¶ 7. While Sperling walked the dog, the dog was unleashed, and the dog was fatally struck by a motor vehicle. *Id.* ¶¶ 8, 10. Later that night, while Ms. Sperling was asleep, Oliver allegedly "struck Ms. Sperling in the head and body

without warning . . . with a hammer." ECF 1-2 ¶ 13. Sperling contends, *inter alia*, that Oliver acted "with the intent to permanently maim her and/or to kill her." *Id.* ¶ 14. Then, Oliver allegedly "dragged Ms. Sperling's body out of his condominium and left her in the hallway." *Id.*¶ 15. Ms. Sperling maintains that she was in a "coma for days after the attack . . . ." *Id.* ¶ 19. Ms. Sperling also claims that Olvier breached a duty of care owed to her. *Id.* ¶¶ 41, 42.

State Farm submitted a news article in support of its Opposition to the Motion. ECF 6-4. The article reported that Oliver, who was then 68 years of age, is a graduate of Johns Hopkins University, and he was an "esteemed scientist" at the National Institutes of Health. *Id.* at 1. According to the article, Sperling suffered a "depressed skull fracture," and "underwent surgery to repair her fractured skull." *Id.* at 2. As a result of the incident, Oliver was charged in State court with attempted first-degree murder and first-degree assault. *Id.*[2] In her tort suit, Ms. Sperling seeks damages in excess of $75,000. ECF 6-2 ¶ 3.

In its federal lawsuit, State Farm does not expressly assert diversity jurisdiction. But, in its civil cover sheet (ECF 1-1), State Farm identified "diversity" as the basis for jurisdiction. *Id.* Plaintiff asserts in the complaint that State Farm is a corporation organized under the laws of Illinois, with its principal place of business in Illinois. ECF 1 ¶ 1. And, State Farm alleges that Oliver resides in Maryland (ECF 1 ¶2) and that Sperling resides in New York. *Id.*¶ 4. In addition, State Farm alleges that the underlying litigation involves a claim in excess of $75,000 in damages. ECF 1 ¶ 6. Moreover, State Farm attached and incorporated the underlying suit filed by Ms. Sperling. ECF 6-2.

---

[2] A judicial case search indicates that on June 15, 2015, Oliver pleaded guilty to the charge of first degree assault, and he is awaiting sentencing.

The homeowner's insurance policy issued by State Farm to Oliver has liability limits of $500,000. State Farm seeks a declaration that it is not required to provide Oliver with a defense or to compensate Sperling for her damages. It relies on a provision of the insurance policy in Section II, titled "Exclusions." Specifically, paragraph 1 of Section II excludes coverage for "bodily injury or property damage: (1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured[.]" ECF 1 ¶ 15; ECF 1-3 (Insurance Policy) at 20.

## II. Discussion

### A. Abstention

Plaintiff urges the Court to "decline its discretionary jurisdiction to issue a declaratory judgment. . . ." ECF 5-1 at 3. According to Oliver, under applicable Maryland law, the matter "is not ripe for adjudication." *Id.* at 4. He notes that Sperling has pleaded counts of negligence, and he "has the right to explain his actions to the jury," giving rise to the potentiality of coverage under the insurance policy. *Id.* at 5.

State Farm recognizes that "pre-tort suit declarations are generally disfavored. . . ." ECF 6 at 6, Opposition. But, it maintains that "Sperling's complaint against Oliver does not trigger [the] potentiality rule" under *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408, 347 A.2d 842, 850 (1975). *Id.* at 5. Moreover, State Farm maintains that the Court "may infer the intentionality of Oliver's actions as a matter of law." *Id.* In its view, the negligence claims in Sperling's suit are "merely dressed-up intentional tort claims." *Id.* at 6.

Both sides argue the merits, under Maryland law, as to why I should or should not grant the requested declaratory relief. I cannot resolve that issue in the context of a motion to dismiss.

I will, however, address the overarching question that has been presented by Oliver in his Motion. He seeks dismissal of the suit, arguing that the Court should not exercise its discretion to issue a declaratory judgment.

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Nevertheless, when jurisdiction is established, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2000). Although the Supreme Court has identified some situations in which, for reasons of comity, federalism, or other prudential concerns, federal courts may abstain from exercising jurisdiction, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. When there are "parallel federal and state suits" but no "traditional grounds for abstention" apply, a stringent "exceptional circumstances" standard ordinarily governs a federal court's decision whether to abstain from exercising jurisdiction. *Chase Brexton Heath Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (analyzing *Colorado River*). In other words, even where there is parallel state and federal litigation, "'[a]bdication of the obligation to decide cases'" is justified only in "'exceptional circumstances.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (citations and some internal quotation marks omitted).

However, as the Supreme Court reaffirmed in *Wilton v. Seven Falls. Co.*, 515 U.S. 277, 286 (1995), district courts have "greater discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of

*Colorado River* and *Moses H. Cone*." In other words, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their discretion yields to considerations of practicality and wise judicial administration." *Id.* at 288. This is because the Declaratory Judgment Act, 28 U.S.C. § 2201, which is the source of a federal court's authority to issue a declaratory judgment, has been understood, "[s]ince its inception," to "confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

Indeed, the Declaratory Judgment Act contains a "textual commitment to discretion": it provides that a court "'*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Wilton*, 515 U.S. at 286 (quoting 28 U.S.C. § 2201(a)) (emphasis in *Wilton*); *see also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, of import here, when a federal suit seeks only discretionary declaratory relief, and there is another proceeding regarding the same issues pending in state court, "a district court may either stay the suit in favor of state court action or 'decline to exercise jurisdiction altogether by . . . dismissing the suit or,'" when the case has been removed from a state tribunal, by "'remanding it to state court.'" *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)).

The inherent discretion of a federal court to abstain from entertaining a declaratory action is often referred to as *Wilton/Brillhart* abstention or *Wilton* abstention. The *Wilton* abstention doctrine implicates the Court's own interests in judicial economy, "practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

In general, the Fourth Circuit has said that "'a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."'" *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996), in turn quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.3d 321, 325 (4th Cir. 1937)) (alteration in *Coffey*). However, "[w]hen a related state court proceeding is pending," such as Sperling's tort suit against Oliver in Montgomery County, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise discretion over a declaratory judgment action." *Coffey*, 368 F.3d at 412 (citations and some internal quotation marks omitted).

In a number of cases decided in the wake of *Wilton*, the Fourth Circuit has elucidated and applied several factors to guide district courts in the exercise of their discretion whether to abstain from issuing a declaratory judgment. *See, e.g.*, *Gross*, *supra*, 468 F.3d 199; *New Wellington Fin. Corp. v. Flagship Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005); *Coffey*, *supra*, 368 F.3d 409; *Myles Lumber*, *supra*, 233 F.3d 821; *Kapiloff*, *supra*, 155 F.3d 488; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998). The factors are often called the "*Kapiloff* factors" or the "*Ind-Com* factors," deriving from the cases decided soon after *Wilton*.[3]

---

[3] Several of the factors articulated in *Kapiloff* and *Ind-Com* were drawn from an earlier case, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). But, the Fourth Circuit has recognized that one aspect of *Nautilus* was overruled by the Supreme Court in *Wilton*: the *Nautilus* Court had balanced the factors itself, applying an "essentially 'de novo'" standard of review to the district court's decision to abstain from exercising jurisdiction over a declaratory action. *Nautilus*, 15 F.3d at 375 (citation omitted). However, the Supreme Court held in *Wilton* that such a decision must be reviewed only "for abuse of discretion." *Wilton*, 515

In balancing the factors, "'[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief.'"  *Ind-Com*, 139 F.3d at 423 (citation omitted).  It "should be a significant factor in the district court's determination," but it "is not dispositive."  *Id.*

If *Wilton* abstention is available for the entire case, a court need not apply the more stringent *Colorado River* "exceptional circumstances" test.  *See Gross*, 468 F.3d at 210-11.  Therefore, before setting forth and applying the *Kapiloff* factors, I must consider whether this case qualifies as a purely declaratory action, to which *Wilton* abstention, guided by the *Kapiloff* factors, may apply.

The Fourth Circuit has made clear that "the *Brillhart/Wilton* standard [of discretionary abstention] does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief."  *Gross*, *supra*, 468 F.3d at 211.  The Court explained: "Because a court is required to address nondeclaratory claims, . . . the benefit derived from exercising discretion not to grant declaratory relief is frustrated" in such a case.  *Id.*

Here, plaintiff's complaint seeks only declaratory relief.  *See* ECF 1 at 4.  Therefore, I am satisfied that the Court is vested with discretion under *Wilton* to abstain from exercising jurisdiction in this case.  Accordingly, to make that discretionary determination, I must apply the *Kapiloff* factors, to which I now turn.

In *Kapiloff*, 155 F.3d at 493-94 (internal citations omitted), the Fourth Circuit said:

---

U.S. at 290; *see Poston*, *supra*, 88 F.3d at 257 (while reaffirming use of factors articulated in *Nautilus*, stating: "To whatever extent our previous decisions have implied further constraints on district court discretion [to abstain from exercising jurisdiction over a declaratory action], *see, e.g.*, *Nautilus*, . . . those decisions must give way to the clear teachings of *Wilton*.").

> [D]istrict courts are not without guidance in exercising [their] discretion. We have explained that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account "considerations of federalism, efficiency, and comity." To aid district courts in balancing the state and federal interests when a parallel state action is pending, we have articulated four factors for consideration: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

As to the first factor, this case involves interpretation of an insurance contract in light of Maryland law as it applies to the underlying tort suit pending in a Maryland court, which alleges intentional conduct but also includes two negligence claims. Resolution of the issues presented in the declaratory action, as to duty to defend and coverage, turn on Maryland law. To that extent, there is a State interest in resolution of the issues. But, as to the second *Kapiloff* factor, neither side has articulated any reason why this Court cannot resolve this litigation. Indeed, pursuant to its diversity jurisdiction, this Court routinely decides issues of Maryland law as well as issues based on the law of other states.

The third *Kapiloff* factor concerns whether overlapping issues of fact or law will result in unnecessary entanglement between state and federal actions. The factual and legal issues here are intertwined with the pending State tort case, but this is not an "unnecessary entanglement."

The fourth *Kapiloff* factor concerns whether the federal action is merely procedural fencing, *i.e.*, forum shopping. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a

9

more favorable forum." *Gross*, 468 F.3d at 212. State Farm had the right to bring its case in this Court. Oliver could have filed a declaratory action in State court but, to my knowledge, he did not do so. Indeed, Oliver does not claim that, in the context of the State tort suit, he raised this issue. State Farm's conduct does not constitute forum shopping.

On balance, the *Kapiloff* factors do not persuade me to exercise my discretion under *Wilton* so as to abstain from resolving this case at the appropriate time.

The recent case of *Capital City Real Estate, LLC v. Certain Underwriters At Lloyds's*, 788 F.3d 375 (4th Cir. 2015), lends support to my decision. There, the plaintiff, a general contractor, brought suit in federal court in Maryland based on diversity jurisdiction, seeking a declaratory judgment that the insurer was obligated to provide a defense and coverage. *Id.* Neither the district judge nor the Fourth Circuit had any difficulty in addressing applicable Maryland law to resolve the issues presented.

Similarly, *State Farm Fire & Casualty Co. v. Baker*, JFM-14-3293, is another insurance case filed by State Farm in this Court, based on diversity jurisdiction. There, the insured, Baker, was convicted of second degree assault in connection with injuries she inflicted on a one-year old child for whom she was providing child care. The child's mother brought a civil suit against the child care provider in a Maryland State court, asserting claims for battery, infliction of emotional distress, and negligence. State Farm filed a declaratory judgment action in federal Court, seeking a declaration that it had no duty to defend or indemnify Baker in the underlying tort suit. Of import here, Judge Motz did not decline to consider the case. To the contrary, he considered the merits in the context of a summary judgment motion filed by State Farm and denied the insurer's motion.

B.

Pursuant to Fed. R. Civ. P. 12(b)(1), Oliver has moved to dismiss on the ground that State Farm "has not properly alleged the diversity jurisdiction of this Court." ECF 5-1 at 2. He points out that "no allegation is made as to why federal jurisdiction applies in this case." *Id.* Moreover, he notes that, to the extent that State Farm relies on diversity of citizenship under 28 U.S.C. § 1332(a)(1), State Farm has merely alleged the residences of the defendants, and not their domiciles. *Id.* at 3.

Curiously, State Farm did not expressly reference diversity jurisdiction in the Complaint. But, in its civil cover sheet (ECF 1-1), State Farm specifically identified diversity as the basis for jurisdiction.

Section 1332 of Title 28 of the United States Code grants jurisdiction to a federal court over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" *Id.* § 1332(a). Notably, jurisdiction under § 1332 "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

Under 28 U.S.C. § 1332(c)(1), a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See* 13F WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3624, at 45-58 (3d ed. 2009, 2011 Supp.) ("The principal effect of Section 1332(c) is obviously to establish dual citizenship for most corporations . . . . [F]or example, when an enterprise incorporated in Delaware and having its principal place of business in Ohio is a party to a suit, diversity is

lacking if any adverse party is a citizen *either* of Delaware *or* of Ohio.") (emphasis added). And, the Supreme Court has clarified that the principal place of business refers to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. . . . *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010)).

As noted, State Farm alleged in its complaint that it is a corporation organized under the laws of Illinois, with its principal place of business in Illinois. ECF 1 ¶ 1. The allegation is jurisdictionally sufficient as to State Farm.

As to Sperling and Oliver, State Farm merely alleged their respective states of residence (New York and Maryland). Notably, "state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998) (internal citations omitted). In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). A U.S. national is a citizen of the state where the person has his or her domicile, which "requires physical presence, coupled with an intent to make the State a home." *Id.*

In the context of a jurisdictional challenge, a court may consider evidence outside the pleadings when there is a challenge to the veracity of the factual allegations pertaining to jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). But, Oliver seems to assert a facial challenge to jurisdiction, claiming the allegations in the complaint are insufficient to establish jurisdiction.

Information in the record suggests diversity jurisdiction. In Sperling's suit against Oliver, appended as an exhibit to State Farm's federal suit, Sperling indicated that she is a United States citizen residing in New York. ECF 1-2 ¶ 1. And, she was served in New York with the federal case. ECF 6-1. Oliver was served in Maryland. *See* ECF 6-3. And, plaintiff's exhibit 4, a news article, sets forth ample personal information about Oliver that suggests he is domiciled in Maryland, and not merely a resident of Maryland.

In the posture of the case, I decline to dismiss the case for lack of diversity jurisdiction. Instead, I will allow State Farm the opportunity to cure by amending its complaint.

### III. Conclusion

For the reasons stated above, I shall DENY the Motion to Dismiss. And, State Farm shall amend its complaint to amplify its jurisdictional allegations.

An Order follows.

Date: October 8, 2015                             /s/
                                          Ellen Lipton Hollander
                                          United States District Judge